

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | 06 CR 70 |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| JOSEPH GIBSON | ) | |

**OPINION AND ORDER**

Charles R. Norgle, District Judge

Before the court is Defendant Joseph Gibson's Renewed Motion for Judgment of Acquittal and Motion in the Alternative for a New Trial. For the following reasons, the Motions are denied.

**I. BACKGROUND**

On March 16, 2007, following a jury trial, Defendant Joseph Gibson ("Gibson") was convicted of two counts of using a facility of interstate commerce for the commission of murder for hire, in violation of 18 U.S.C. § 1958, one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and one count of knowingly possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). At trial, the Government's evidence established the following facts.

A cooperating witness in this case, Walter Hampton ("Hampton"), had been an acquaintance of Gibson's since the 1990s. After Hampton was released from state prison in 2005, he resumed contact with Gibson. Gibson was then involved in an illegal drug trafficking operation at the intersection of Pulaski Road and Adams Street on the west side of Chicago. In 2004, Gibson had shared that location with another drug dealer, Jeffrey Coleman. The two had

split the proceeds from that drug distribution location, but, in late 2004, Coleman was sent to prison. At this point, Gibson took complete control over the drug trafficking business at Pulaski and Adams, as well as the corresponding profits.

In early 2005, however, Coleman was released from prison and sought to resume his drug trafficking activities. Negotiations between Gibson and Coleman regarding the control of, and profits from, the drug distribution site at Pulaski and Adams apparently failed, and Gibson became fearful that Coleman might attempt to injure or kill him in an attempt to resolve this dispute. Gibson therefore offered Hampton a 50% share of the profits from Pulaski and Adams in return for Hampton's agreement to kill Coleman. Gibson also offered to provide Hampton with a gun to use as the murder weapon. In response, Hampton requested that Gibson provide him with a "clean" gun, i.e. one that did not have a serial number.

The FBI then arranged for Hampton to make a number of recorded cellular telephone calls to Gibson regarding this plan. During these calls, Hampton again requested a gun from Gibson, and Gibson again agreed to provide Hampton with a gun. Gibson and Hampton also engaged in two face to face meetings which were recorded with Hampton's consent, and observed by an undercover officer who drove Hampton to the first meeting. During the first meeting, Gibson provided Hampton with a loaded Pucara .38 caliber revolver with the serial number obliterated. During the second meeting, Hampton requested money from Gibson so that Hampton could "get low" after killing Coleman. The undercover officer also observed this meeting.

The FBI then arrested Gibson. After agreeing to waive his Miranda rights, Gibson provided both an oral and written confession in which he corroborated the existence of the feud

between himself and Coleman, admitted that he gave the gun to Hampton so that Hampton could murder Coleman, and also admitted that he had agreed to pay Hampton an as yet undetermined sum for the murder.

After the Government rested its case, Gibson moved the court pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal. The court denied the motion. Gibson now renews this motion pursuant to Rule 29(c)(2), and, in the alternative, moves the court for a new trial pursuant to Rule 33. These Motions are fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Pursuant to Federal Rule of Criminal Procedure 29(a), before a case is submitted to the jury, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." After a jury verdict, a defendant may renew his or her motion for judgment of acquittal pursuant to Rule 29(c)(2). In deciding a Rule 29 motion,

> [t]he firmly established rule is that the court must decide whether at the time of the motion there was relevant evidence from which the jury could reasonably find (defendant) guilty beyond a reasonable doubt. Evidence will be evaluated in the light most favorable to the Government, bearing in mind that it is the exclusive function of the jury to interpret witness credibility.

United States v. Khilchenko, 324 F.3d 917, 921 (7th Cir. 2003) (internal quotation marks and citation omitted); United States v. Payne, 102 F.3d 289, 295 (7th Cir. 1996); United States v. Reed, 875 F.2d 107, 111 (7th Cir. 1989). A court may only grant a Rule 29 motion "when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." United States v. Blassingame, 197 F.3d 271, 284 (7th Cir. 1999)

(internal quotation marks and citation omitted). The Rule 29 movant therefore "faces a nearly insurmountable hurdle." Id.

Pursuant to Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The court should order a new trial "only where the verdict is against the manifest weight of the evidence, and a guilty verdict would result in a miscarriage of justice." United States v. Jenkins, 218 F.R.D. 611, 613 (N.D. Ill. 2003). Motions to grant a new trial "are disfavored, and properly granted only in the most extreme cases." Id. In deciding a motion to grant a new trial, "the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses." United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999). "If the complete record, testimonial and physical, leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial." United States v. Morales, 910 F.2d 467, 467 (7th Cir. 1990).

## B. Gibson's Motion for Acquittal or for a New Trial

Gibson makes the following assertions in his motion for acquittal or for a new trial. As to the murder for hire charges, Gibson argues that there was insufficient evidence to demonstrate that (1) there was any promise or agreement between Gibson and Hampton regarding a murder for hire, (2) Gibson used or caused the use of a facility of interstate commerce in arranging a murder for hire, (3) Gibson intended that a murder be committed. In addition, Gibson asserts that the court's jury instructions misstated the law. As to the gun possession charges, Gibson argues that there was insufficient evidence to demonstrate that (1) Gibson possessed a gun, (2) Gibson knew that the Pucara's serial number had been obliterated.

4

*1. Murder for Hire*

The court first notes that the Government presented relevant evidence that Gibson used a facility of interstate commerce in arranging this murder for hire. This evidence was in the form of recorded telephone calls between Gibson and Hampton. Seventh Circuit caselaw does not support Gibson's argument that the Government manufactured federal jurisdiction in this case. See United States v. Skoczen, 405 F.3d 537, 544 (7th Cir. 2005) (a "manufactured jurisdiction" defense is unavailing where the defendant has freely participated in the "jurisdictional" act); United States v. Peters, 952 F.2d 960, 962-63 (7th Cir. 1992). Gibson's assertion that there was insufficient evidence to demonstrate that he used or caused to be used a facility of interstate commerce during the commission of this crime therefore fails.

Gibson also asserts that there was insufficient evidence to demonstrate the existence of an agreement between himself and Hampton, pursuant to which Hampton would kill Coleman for some sort of consideration. This argument also fails. Hampton testified that Gibson offered him 50% of the proceeds from the drug operation at Pulaski and Adams if he would kill Coleman. Recorded telephone conversations between Gibson and Hampton, as well as Gibson's confession, corroborated Hampton's testimony. The Government therefore clearly presented relevant evidence from which a rational jury could reasonably have found that there was a murder for hire agreement between Gibson and Hampton. See Khilchenko, 324 F.3d at 921.

Finally, Gibson argues that the court's jury instructions on murder for hire did not comport with the law. This argument is also without merit. The court gave the following principal instructions with respect to the § 1958 charges.

> To sustain the charge of using an interstate commerce facility in the commission of murder for hire as charged in Counts One and Two of the indictment, the government must prove the following propositions:
>
> First, that the defendant knowingly used or caused another to use a facility of interstate commerce as charged in the indictment;
>
> Second, that the use of a facility of interstate commerce was done with the intent that a murder be committed in violation of the laws of the State of Illinois; and
>
> Third, that anything of pecuniary value was received or promised or agreed to be paid as consideration for the murder.
>
> *******************
>
> As used in these instructions, the phrase "anything of pecuniary value" means anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage.
>
> *******************
>
> In considering whether "anything of pecuniary value" was received or promised or agreed to be paid as consideration for the alleged murder, you are instructed that not only money, but also drugs, guns, or involvement in future crimes which would yield cash profits, can also constitute consideration.

The three "propositions" the court indicated that the government needed to prove were taken directly from the murder for hire statute, and virtually track the statutory language. See 18 U.S.C. § 1958(a). The court's definition of "pecuniary value" is identical to the statutory language. See 18 U.S.C. § 1958(b)(1). The court's definition of consideration in the context of § 1958 comports with Seventh Circuit caselaw. See United States v. Richeson, 338 F.3d 653, 656-57 (7th Cir. 2003) (finding that anything which is significant primarily because of its economic value, such as drugs, guns, insurance policies, or real estate, can constitute consideration under § 1958). The court's jury instructions therefore did not misstate the law.

For the above stated reasons, Gibson's motion for acquittal as to the murder for hire charge is denied. In addition, the court determines that the jury's verdict on this charge was not "against the manifest weight of the evidence." See Jenkins, 218 F.R.D. at 613. After again reviewing the overwhelming evidence of Gibson's involvement in this plot, the court is not left with a "strong doubt as to [Gibson's] guilt." See Morales, 910 F.2d at 467. Moreover, there was no danger that the court's instructions to the jury were confusing or misleading. See United States v. Murphy, 469 F.3d 1130, 1137 (7th Cir. 2006). Gibson's motion for a new trial as to the murder for hire charge is therefore also denied.

### 2. *The Firearm Charges*

Gibson first asserts that because his fingerprints were not found on the gun, the ammunition, or the box in which he carried the gun, and because no audio or video tape shows or reflects him possessing a gun, there was insufficient evidence to convict him of being a felon in possession of a firearm. This argument is plainly meritless. An undercover officer testified at trial that he saw Gibson hand the gun to Hampton, and Gibson confessed to possessing the gun. This is clearly relevant evidence from which a jury could reasonably have found Gibson guilty beyond a reasonable doubt as to the possession charge. See Khilchenko, 324 F.3d at 921. As to the charge of being in knowing possession of a firearm with the serial number obliterated, Gibson argues that there was insufficient evidence to demonstrate that he knew the Pucara's serial number was missing. However, Hampton testified that he instructed Gibson to produce a "clean" gun for the murder, and the Pucara's serial number was in fact obliterated. The court must not make determinations as to the credibility of witnesses when considering a motion for acquittal. Id. Hampton's testimony is clearly relevant evidence from which a reasonable jury

could have found Gibson guilty beyond a reasonable doubt as to the §922(k) charge. Gibson's motion for acquittal regarding the firearm charges is therefore denied.

Gibson's motion for a new trial regarding the firearm charges is also denied. The court determines that the jury's verdict on these charges was not "against the manifest weight of the evidence," see Jenkins, 218 F.R.D. at 613, and the court is not left "with a strong doubt as to [Gibson's] guilt." See Morales, 910 F.2d at 467.

### III. CONCLUSION

For the foregoing reasons, Gibson's Renewed Motion for Judgment of Acquittal and Motion in the Alternative for a New Trial are denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: May 4, 2007